1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

ROBERT GLASS,

CASE NO. 1:05-cv-0457-LJO-DLB PC

10
                          Plaintiff,

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT IN PART

11
      v.

12
A.K. SCRIBNER, et al.,

(Doc. 48, 50)

13
                          Defendants.
                                        /

14
15
16       A.      Procedural History

17            Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42

18    U.S.C. § 1983.  This action is proceeding on plaintiff's complaint, filed April 8, 2005, against

19    defendants A.K. Scribner, S. Johnson, D. Thompson, D. James and Schultz ("defendants") for

20    violating his rights under the Free Exercise Clause of the First Amendment, the Equal Protection

21    Clause of the Fourteenth Amendment and the Eighth Amendment.  On April 26, 2007, plaintiff filed

22    a motion for summary judgment.  On May 21, 2007, defendants filed an opposition and cross

23    motion for summary judgment.  Plaintiff filed an opposition to defendants' motion on June 18,

24    2007.[1]

25       B.      Legal Standard

26            Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

27
28            [1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
      court in an order filed on January 31, 2006.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

    C.    <u>Statement of Undisputed Facts</u>[2]

1.    Plaintiff was incarcerated at the California State Prison, Corcoran from April 2003 to October 2005.

2.    Plaintiff is currently incarcerated at the California State Prison, Sacramento.

3.    In November 2005, plaintiff informed the court that his address changed to California State Prison, Sacramento.

4.    Defendants Scribner, Thompson, James, Schultz and Johnson were employees of the

---

[2]These undisputed facts are taken from defendants' statement of undisputed facts and plaintiff's response.

1    California State Prison, Corcoran.

2    5.    Plaintiff began practicing the Ausarian religion approximately eight years ago while

3          in prison.

4    6.    In a Mental Health Interdisciplinary Progress Note dated December 2004, the

5          interviewer noted that plaintiff stated he was Muslim.  Plaintiff denies that he is

6          Muslim and that he made the statement.

7    7.    In July 2005, plaintiff wrote in a grievance that he "is a Rastafarian who wears a full

8          beard and hair fashioned into dread locks (for spiritual reasons)."

9    8.    In January 2001, because of misuse by inmates, the California State Prison, Corcoran

10         suspended the use of oils for religious purposes.  The oils, which are flammable were

11         being lit and left unattended in the housing units.  This created concerns of injury to

12         staff and inmates as well as the risk that use of the oils would cause a fire in the

13         facility.  The use of oils for religious purposes had been allowed in the past, however,

14         the seriousness of the safety and security concerns that developed in 2000-2001

15         compelled the use of oils to be suspended.  Inmates were allowed to keep the oil they

16         had.

17   9.    The suspension applied to all groups that used oils in their religious practices.

18   10.   The suspension of oil was in effect when plaintiff arrived at California State Prison,

19         Corcoran in April 2003.

20   11.   Plaintiff arrived at California State Prison Corcoran with a small amount of oil,

21         which was not confiscated by prison staff.

22   12.   By 2002, the suspension policy was modified so that all inmates who needed oil for

23         religious purposes could request, maintain and receive oils from the Muslim

24         chaplain, regardless of religious faith, at religious services, as appropriate.  This

25         policy allowed authorized inmates to have the oils and enabled staff to monitor the

26         appropriate use of the oils for religious purposes.  The unrestricted and unmonitored

27         in-cell use of the oils would continue to be a safety and security problem at California

28         State Prison, Corcoran.

13.      Defendant Johnson claims she took no action to interfere or deprive plaintiff of any authorized religious artifacts or objects.  She claims she did not know that plaintiff was acquiring religious artifacts and that plaintiff did not inform her of the same.  Johnson claims she was unaware of chronos issued in October 2003 and January 22, 2004 authorizing plaintiff to wear and possess religious artifacts.  Johnson did not write the chronos for plaintiff's other religious artifacts.

14.      Plaintiff was in the process of working with the Muslim chaplain to obtain the oils for plaintiff to meditate when he was transferred out of Corcoran.

15.      In addition to the administrative appeals process, an inmate can file a complaint in which the inmate may allege misconduct or request action.  An inmate may make allegations or requests on a CDCR 602 Form but are permitted to make their allegations in the form of a letter or other writing.  An inmate may also request an appointment to meet with his correctional counselor and/or facility sergeant, lieutenant, captain, associate warden and warden.  The inmate can also make his grievance known or addressed by any one or all of these individuals by letter.

16.      Plaintiff requested action on his dietary issues through CDCR Form 602, Log #04-590 and a letter to Warden Scribner proposing that a religious organization contract with the Department of Corrections and Rehabilitation.  The letter to Warden Scribner references the 602 Form, Log #04-590.  The 602 and letter were part of the prison's administrative appeal process.

17.      In September 2003, defendant James was not the Institutional Food Manager for California State Prison, Corcoran and had not served in that position for five months before that date.  Under Title 15, § 3054 of the California Code of regulations, the chaplain was required to send the verification of religious diet to the institutional food manager.

18.      Defendant Shultz was the dietician for the Acute Care Hospital at the California State Prison Corcoran during times relevant to this action.

19.      Defendant Shultz did not have authority to modify the diet of inmates who were not

5

1      patients at the hospital.

2      20.    In July 2004, plaintiff made a request to see a dietician for a consult.  In August 2004,

3             plaintiff was seen by Dr. Greaves who noted that plaintiff "is a well developed male

4             who certainly does not seem to be affected by his diet."  Dr. Greaves noted that

5             plaintiff was not requesting medical treatment.  The referral information indicated

6             that plaintiff claimed to be a vegetarian and wanted to discuss his diet with a dietician

7             to help him control his nutrition.

8      21.    In late August 2004, plaintiff met with defendant Shultz.  Defendant Shultz contends

9             that during the meeting, plaintiff was not interested in receiving instruction about diet

10            but only wanted defendant to provide him with a written opinion supporting his

11            belief that there were nutritional deficiencies in his diet.  Defendant Shultz contends

12            that plaintiff did not tell her about any symptoms or medical problems and did not

13            request that she refer him for tests or medical treatment.  Plaintiff was not a patient

14            at the hospital.  Defendant Shultz did not agree that there were nutritional

15            deficiencies in plaintiff's diet.  Plaintiff was informed that the daily diet consisted of

16            approximately 3000 calories and as an adult male he would need about 2200 calories

17            per day.  As a vegetarian, plaintiff was allowed to make substitutions at every meal,

18            including but not limited to, extra vegetables or fruit for meat products, juice instead

19            of milk, and two extra peanut butter sandwiches at lunch.  Plaintiff was informed that

20            defendant Shultz did not have the authority to modify his diet over and above the

21            accommodations that had been previously made for him.  Her authority over the diet

22            of inmates was limited only to those who are patients at the Acute Care Hospital.

23            Shultz contends the meeting with plaintiff in August 2004 was her only contact with

24            plaintiff.

25     20.    During the relevant time period, plaintiff had a chrono which allowed him to take

26            multivitamins sent by a religious organization.

27     21.    The master prison menus are designed to meet the nutritional needs of normal healthy

28            adults.  The 2004 master prison menu contained approximately 3000 calories per day.

6

The prison master menu contains approximately 300 more calories per day than the minimum amount required by the average, moderately active adult to maintain adequate nutrition.  The reason the prison menu was created to have more than the normal amount of calories is so that inmates may discard food they dislike or food that does not agree with them and still receive an adequate amount of nutrition per day.  All prisons, including the California State Prison Corcoran, serve the master prison menu but each prison is permitted to substitute certain items if the item falls within the established guidelines for maintaining proper, balanced nutrition.

22.    At his deposition, plaintiff admitted that it is virtually impossible to eat the way you want to eat as a vegan in prison.

23.    Plaintiff admits that he is not going to be able to practice his religion the way he would like because he is in prison.

Plaintiff's Additional Undisputed Facts

24.    Plaintiff contends he is a vegetarian due to his religious faith.  On September 12, 2003, Aqeel M. El-Amin, Muslim Chaplain at Corcoran State Prison directed a memorandum to "Darren James, Institutional Food Manager," indicating that plaintiff had requested special religious dietary provisions, which had been verified by Mr. Amin.  Mr. Amin also stated that the Ausarian inmates, of which plaintiff was included, had identified a religious organization of the faith to provide their required dietary needs.

25.    On December 23, 2003, plaintiff filed Inmate Appeal Log. 04-590, stating, "This 602/complaint also serves as a formal notice to the food manager Darren James, Warden A.K, Scribner and the director of corrections, E. Alameida that the above constitutional rights are currently being violated."

26.    In Inmate Appeal Log. 04-590, plaintiff requested that pursuant to CDCR, title 15 section 3054(2), he be allowed to receive natural vegan foods from his religious organization and vendors.

27.    Inmate Appeal Log. 04-590 states, "See attached Appeal/Response form dated

1    3/01/04 signed by D. Thompson."

2    28.    On March 3, 2004, plaintiff received a fact finding report written by Dean Thompson
3           and addressed to D. Leon, Associate Warden, Business Services (A) in regards to
4           plaintiff's appeal and this report stated that the food service department was in
5           process of formulating procedures to address religious diets and that the action
6           dictated no intention to deny religious diets but only to make them easier to process.

7    29.    On March 26, 2004, plaintiff submitted his appeal for second level review stating,
8           "Thus far my religious needs have not been met.  This is in direct violation of the
9           rules and regulations of CDC and because I am a strict vegetarian I am currently
10          being deprive [sic] of adequate intakes of calories, vitamins B12 and D, Iron,
11          Calcium and protein."

12   30.    In April 2004, plaintiff received notification of delay of appeals process from CSP
13          Corcoran Appeal Office.

14   31.    On April 13, 2004, plaintiff was interviewed by Dean Thompson and informed that
15          meat-free lunches (peanut butter and jelly) would be made and sent to him and that
16          any contract with a religious organization to provide him with a vegan food items
17          must be donated by that religious organization.  Plaintiff's request for monetary
18          compensation was denied, thus the First Level response was deemed partially
19          granted.

20   32.    On May 12, 2004, V. Yamamoto, partially granted plaintiff's appeal at the second
21          level of review informing plaintiff that food items from his religious organization
22          would have to be donated and his request for monetary compensation was denied.

23   33.    On June 18, 2004, plaintiff submitted his appeal to the third level.  On August 9,
24          2004, N. Grannis returned the appeal to plaintiff.

25   34.    On August 4, 2004, Diane Brewer, spiritual counselor, sent a certified letter to
26          assistant correctional food manager Dean Thompson, explaining that her religious
27          organization wished to contract with Corcoran State Prison to provide plaintiff
28          religious dietary needs to ensure his health and well being.

35.   On August 27, 2004, Dean Thompson wrote a letter to Diane Brewer acknowledging her interest and informing her that per regulation any religious organization may contract with the Department provided the contract doesn't result in additional cost. Mr. Thompson informed Ms. Brewer that any vegan food would need to be donated and any product and/or packaging material would require security clearance. He also informed her that he would refer her request to the Internal Investigation Unit.

36.   On September 20, 2004, Ms. Brewer sent another letter to Mr. Thompson asking for a referral to the Internal Investigation Unit for more information on packaging.

37.   In December 2004, plaintiff presented Warden Scribner a proposal for his religious organization to contract with the prison to provide his religious dietary needs.

D.   Discussion

1.   Defendants' Motion for Summary Judgment

a.   Free Exercise Claims

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations

alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 382 U.S. at 349. Under this standard, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987). First, "there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," and "the governmental objective must itself be a legitimate and neutral one." Id. A second consideration is "whether there are alternative means of exercising the right that remain open to prison inmates." Id. at 90 (internal quotations and citation omitted). A third consideration is "the impact accommodation of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

### (1)   Suspension of the Use of Prayer Oil

Defendants argue that suspending the use of prayer oils, which the prison found to be hazardous when lit and left unattended in a cell, was directly related to the legitimate penological interest of protecting the safety and security of the institution.[3] Johnson Dec., ¶3. Defendants contend that allowing the unrestricted and unsupervised in cell use of flammable oils created a safety concern through either intentional or accidental misuse of the oil which would result in fires and injury to staff and inmates. *Id.* Defendants therefore contend the prison acted reasonably and demonstrated a legitimate penological interest in denying plaintiff unrestricted and unsupervised use of the oil.

Defendants also point out that despite the ban, plaintiff had alternative means of practicing his religion because by 2002, the suspension policy was modified so that all inmates who needed oil for religious purposes could request, maintain and receive oils by the Muslim chaplain, regardless of religious faith, at religious services, as appropriate. Johnson Dec., ¶4.

---

[3]For purposes of their motion for summary judgment only, defendants do not dispute the sincerity of plaintiff's religious beliefs. For purposes of plaintiff's motion however, defendants dispute the sincerity of plaintiff's religious beliefs.

1      Defendants argue that allowing plaintiff and other prisoner's in-cell use of oils would have

2  required prison officials to closely monitor the activity, thereby causing additional strain on prison

3  resources affecting prison staff and other inmates.  Defendants contend that the only alternative to

4  plaintiff's exclusion from in-cell use of the oil at nighttime would have been to provide more

5  security, which as discussed above, would greatly impact prison resources.

6      The court finds that defendants have met their initial burden of informing the court of the

7  basis for their motion, and identifying those portions of the record which they believe demonstrate

8  the absence of a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish

9  that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v.

10 Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the

11 existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his

12 pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

13 admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

14 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474

15 F.2d 747, 749 (9th Cir. 1973).  Plaintiff must do more than attack the credibility of defendants'

16 evidence, see National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983)

17 ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her

18 credibility suffices to avert . . . judgment."), and arguments or contentions set forth in a responding

19 brief do not constitute evidence, see Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762

20 (9th Cir. 1987) (recitation of unsworn facts not evidence).[4]

21     Plaintiff argues the "partial ban" on the use of oils amounts to a total ban for him.  Plaintiff

22 states that under the modified policy, the oils were only available at Muslim services, which were

23 held at different times than his religion requires him to meditate and perform rituals.  Plaintiff's

24 Declaration in Opposition ¶ 40.  Plaintiff states that he performs meditation and rituals every night

25 from 8:00 - 10:00 p.m. and therefore he requires the essential oils in his possession during these

26

27     [4] However, verified complaints and oppositions constitute opposing affidavits for purposes of the summary
   judgment rule if they are based on facts within the pleader's personal knowledge.  Johnson v. Meltzer, 134 F.3d
28 1393, 1399-1400 (9th Cir. 1998).

1    times. *Id.* Plaintiff also suggests that non-flammable oils would be a sufficient alternative.

2    With respect to the first prong, it is undisputed that there is a rational connection between the

3    regulation and prison safety concerns, a legitimate governmental interest.   Thus, the first prong of

4    the *Turner* test weighs in favor of defendants.

5    The second factor requires the court to examine whether, notwithstanding the regulation on

6    one aspect of plaintiff's religion, plaintiff still has alternative means of exercising his religion.

7    "The relevant inquiry under this factor is not whether the inmate has an alternative means of

8    engaging in a particular religious practice that he or she claims is being affected; rather, we are to

9    determine whether the inmates have been denied all means of religious expression." Ward, 1

10   F.3d at 877 (citing *O'Lone,* 482 U.S. at 351-52, 107 S.Ct. 2400).   Defendants argue that plaintiff

11   was able to participate in other aspects of his religion because he was given access to oils and an

12   opportunity to meditate while using, albeit at different times.   Plaintiff argues that the alternative

13   amounts to a total ban on his ability to meditate because his prayer time is at night.   However, as

14   noted, the relevant inquiry is not whether there are alternative means of practicing the particular

15   religious practice, but rather whether the inmate has been denied all means of religious

16   expression.   Here plaintiff was not denied all means of religious expression.   This factor

17   therefore weighs in defendants' favor.

18   The third prong requires the court to assess the burden that accommodating plaintiff's

19   wish to retain the oils in his cell would place on prison resources.   Defendants have presented

20   evidence, which plaintiff does not dispute, that allowing plaintiff and other prisoners in-cell use

21   of oils would require prison officials to closely monitor the activity thus placing burdens on the

22   prison with respect to safety and prison resources.

23   The fourth *Turner* factor requires the court to evaluate whether there are alternatives to

24   the prison's current policy that would accommodate plaintiff at *de minimis* costs.   Defendants

25   contend the only alternative to plaintiff's exclusion form in-cell use of the oil at nighttime would

26   have been to provide more security to ensure order during these activities, which as discussed

27   would impact prison staff, other inmates and prison resources.   Plaintiff states that allowing him

28

to use non-flammable oils in his cell is a reasonable alternative that would address defendants' concerns.  Defendants do not address this alternative nor does plaintiff provide information on the cost of non-flammable oils.

Assuming the fourth *Turner* factor weighs in plaintiff's favor, the other three do not.  The *Turner* test is a balancing test and not every prong must be met in order to find that a regulation is reasonably related to a legitimate penological interest.  The Court therefore finds that the regulation at issue is reasonably related to a legitimate penological interest and plaintiff's Free Exercise claim must fail as a matter of law.[5]

(2)   Religious Diet

Plaintiff also contends that defendants violated his First Amendment right to free exercise of his religion by denying him the foods he required.  Plaintiff contends he is forbidden from consuming animal products and food items containing their by-products.

Defendants do not address the merits of this claim but only address the individual defendants' involvement in the alleged deprivation, arguing that plaintiff cannot establish each defendants' personal involvement in the alleged violation of his constitutional rights.  Defendants also contend plaintiff's request for injunctive relief is moot because he has been transferred to another prison.

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, No. 03-56712, 2007 WL 2445998, *5 (9th Cir. Aug. 30, 2007) (quoting

---

[5]Defendant Johnson contends his signature of the memorandum suspending the use of prayer oil is the only involvement alleged by plaintiff and this conduct did not violate his constitutional rights as discussed above.  Because the Court finds that the regulation did not violate plaintiff's constitutional rights, plaintiff fails to state a claim against defendant Johnson.

1   Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "[T]he 'requisite causal connection can be

2   established not only by some kind of direct, personal participation in the deprivation, but also be

3   setting in motion a series of acts by others which the actor knows or reasonably should know

4   would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson at 743-44). ]

5         Defendant Shultz contends she was not asked to modify plaintiff's diet nor did she have

6   the authority to do so.  DUF 19.  Shultz contends that she was asked to provide an opinion of

7   plaintiff's dietary deficiencies, an opinion that she did not share.  Plaintiff contends that Shultz

8   did not provide information regarding the types of foods he could substitute in his diet to meet

9   his religious requirements and that she disregarded his religious beliefs by suggesting that he

10  "defile" his body and religious conscience by consuming meat and animal products.  See

11  Plaintiff's Declaration, ¶ 25.

12        Plaintiff has not submitted any evidence to establish that defendant Shultz had the

13  authority to modify his diet or that she was responsible for depriving plaintiff his special

14  religious dietary needs in violation of his First Amendment rights.  Nor has plaintiff submitted

15  evidence that Shultz was responsible for depriving plaintiff of any of his constitutional rights.

16  Section 1983 plainly requires that there be an actual connection or link between the actions of the

17  defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

18  Departm ent of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "'A

19  person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§]

20  1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to

21  perform an act which [that person] is legally required to do that causes the deprivation of which

22  complaint is made.'"  Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v.

23  Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  Absent evidence that defendant Shultz was

24  responsible for his inability to obtain his religious diet or an adequate diet, defendant is entitled

25  to judgment as a matter of law on plaintiff's claims against her.

26        Defendant James contends that the chaplain mistakenly sent him the request for a

27  religious organization to donate food to plaintiff.  James Dec., ¶ 4.  Defendant James contends he

28

was not the food manger and further, plaintiff failed to provide the names and addresses of the religious organizations as required under the regulation. *Id.*  As pointed out by plaintiff, notwithstanding any mistake by the chaplain, defendant James acknowledges that he received the request but failed to forward it to the Institutional Food Manager.  This is sufficient to bring into dispute defendants' personal involvement in the alleged violation of plaintiff's constitutional rights.

Defendants Thompson and Scribner contend their involvement in this case was limited to their processing of plaintiff's appeals, which cannot serve as basis for liability under section 1983.  Plaintiff disputes this and contends that defendant Thompson as the Food Manager and defendant Scribner as Warden failed to respond to requests by his religious organization to contract with the prison to provide the religion dietary needs of plaintiff.  Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment, ¶ 14, Complaint ¶ 36 - 38, 40, 42. Plaintiff's complaint and declaration are sufficient to bring into dispute defendants' personal involvement in the alleged violation of plaintiffs constitutional rights.

(3)   Injunctive Relief

Defendants argue that plaintiff's request for injunctive relief is now moot because he has been transferred to California State Prison, Sacramento.  DUF 2.  When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions.  Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  Because plaintiff is no longer incarcerated at Corcoran State Prison, his requests for injunctive releif concerning that prison are moot.   2.

Plaintiff's Motion for Summary Judgment

Plaintiff contends he is entitled to summary judgment on his claim that defendants violated his First Amendment and Equal Protection rights by failing to accommodate his special religious diet and use of essential oils for meditation and rituals.  Defendants argue that plaintiff is not entitled to summary judgment because there are disputed issues of material fact as to

15

whether his religious practices are based on a sincere religious belief.

To prevail on his motion for summary judgment, plaintiff must establish beyond controversy every essential element of his claim.  Fontenot, 780 F.2d at 1194.  Defendants have submitted evidence that in December 2004, plaintiff stated he was Muslim (DUF 7) and in July 2005, plaintiff wrote in a grievance that he "is a Rastafarian who wears a full beard and hair fashioned into dread locks (for spiritual reasons)."  DUF 8.  Defendants therefore dispute the sincerity of plaintiff's religious beliefs.  "[I]t is a commonplace of federal practice that a party's state of mind "is not readily susceptible to resolution on a motion for summary judgment." Rouser v. White, 944 F.Supp. 1447 (E.D.Cal. 1996), *citing* Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1231 (E.D.Cal.1985), *aff'd,* 810 F.2d 898 (9th Cir.1987).  Because there is a material dispute as to the sincerity of plaintiff's religious beliefs, plaintiff's motion for summary judgment must be denied.

E.   Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment, filed April 26, 2007 is HEREBY DENIED.  Defendants' motion for summary judgment, filed May 21, 2007, is GRANTED IN PART and DENIED IN PART as follows:

1.   Defendants' motion for summary adjudication on plaintiff's free exercise claim arising from the denial of essential oils is GRANTED;

2.   Defendant Shultz's motion for summary adjudication on plaintiff's free exercise claim against her is GRANTED; defendants' Thompson, James and Scribner's motion for summary adjudication on plaintiff's free exercise claim arising out of the alleged denial of a vegetarian diet is DENIED;

3.   Defendants' motion for summary adjudication on plaintiff's claims for injunctive relief is GRANTED; and

4.   This case shall proceed to trial against defendants Scribner, Thompson and James on plaintiff's free exercise claim arising out of the alleged denial of a vegetarian

diet as required for his religious beliefs.


IT IS SO ORDERED.

**Dated:**    **March 13, 2008**                    **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE