# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ROBERT GLASS,                              CASE No.: 1:05-cv-00457 LJO DLB PC

                Plaintiff,

      v.                                   **PRETRIAL ORDER**

A.K. SCRIBNER et al.,                      Jury Trial: August 25, 2008 at 9:00 a.m.,
                                           Courtroom 4, before United States District Judge
            Defendants.             Lawrence J. O'Neill.

_____/

      Plaintiff Robert Glass ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed April 8, 2005 against defendants Scribner, Thompson and James on plaintiff's free exercise claim arising out of the alleged denial of a vegetarian diet as required for his religious beliefs.

      A telephonic trial confirmation hearing was held in this matter on June 27, 2008, and the Court now issues the instant Pretrial Order.

## I.    Jurisdiction and Venue

      The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

## II.    Jury Trial

      The parties request trial by jury.

///

///

**III.**     **Facts**

    A.    <u>Undisputed Facts</u>

    <u>Defendants' Undisputed Facts</u>

1.    Plaintiff was incarcerated at the California State Prison, Corcoran from April 2003, to October 2005.

2.    Defendants Scribner, Thompson, and James were employees of the California Department of Corrections and Rehabilitation at the California State Prison, Corcoran (CSP-Cor) during Plaintiff's incarceration.

3.    Plaintiff began practicing the Ausarian religion in 1997 or 1998.

4.    Plaintiff adopted a vegetarian diet in August, 1998.

5.    Plaintiff's Ausarianism is not based on belief.

6.    In December 2004, Plaintiff stated he is a Muslim.

7.    In July 2005, Plaintiff stated he is a Rastafarian.

8.    The religious practices for Ausarianism can be done or not done and one can maintain their balance. These are things that one does to stay balanced for one's own benefit.

9.    At all times while incarcerated at CSP-Corcoran, Plaintiff was on a vegetarian diet.

10.    In April 2004, Plaintiff stated that, up to that point, his religious diet had been accommodated.

11.    As a vegetarian, Plaintiff was allowed to make replacement substitutions at every meal for meat and dairy products.

12.    In July 2004, Plaintiff requested to see a dietician for a consult.

13.    In August 2004, Plaintiff was seen by a Dr. Greaves.

14.    Dr. Greaves noted that Plaintiff is a well developed male who does not seem to be affected by his diet.

15.    Dr. Greaves provided Plaintiff with a referral for a consultation with a dietician.

16.    The purpose of the referral was that Plaintiff wanted to discuss his vegetarian diet

with a dietician to help him control his nutrition.

17.    On August 27, 2004, Plaintiff met with L. Schultz, Registered Dietician.

18.    During the consultation, Plaintiff claimed that there were nutritional deficiencies in his diet. However, Plaintiff did not relate to Ms. Schultz any symptoms or medical problems, and did not request a referral him for tests or medical treatment.

19.    Ms. Schultz advised Plaintiff that there were no nutritional deficiencies in his diet. Plaintiff was informed that the daily diet consisted of approximately 3000 calories and as an adult male he would need about 2200 calories per day.

20.    As a vegetarian, Plaintiff was allowed to make substitutions at every meal, including but not limited to, extra vegetables or fruit for meat products, juice instead of milk, and two extra peanut butter sandwiches at lunch.

21.    Plaintiff had a chrono which allowed him to take multi-vitamins.

22.    The master prison menu is designed to meet the nutritional needs of normal healthy adults.

23.    The 2004 master prison menu contained foods containing approximately 3000 calories per day.

24.    The prison master food menu contains approximately 300 more calories per day than the minimum amount required by the average, moderately active adult to maintain adequate nutrition.

25.    The prison master food menu was created to have more than the normal amount of calories so that inmates may discard food they dislike, or food that does not agree with them and still receive adequate daily nutrition.

26.    All prisons, including the CSP-Cor, use the master prison food menu, but each prison is permitted to substitute certain items if the item falls within established guidelines for maintaining proper, balanced nutrition.

27.    Even if Plaintiff is unable to adhere to a strictly vegan diet in prison, there are no religious consequences.

Plaintiff's Undisputed Facts

1    Plaintiff is Ausarian and adheres to a vegan diet.

2    Plaintiff claims that defendants deprived him of his religious dietary needs and accommodations that are an essential element of his religious faith.

3    From September 12, 2003 to April 13, 2004, plaintiff was provided vegetarian lunches that were nutritionally deficient.

4    For over seven months plaintiff was deprived of special religious accommodations for breakfast and dinner, as prescribed by California Code of Regulations title 15, §3054.

5    Plaintiff does not consume animal products or food containing animal by-products.

6    Plaintiff was not provided with a vegetarian source of protein and was deprived of a wholesome and nutritionally balanced vegan diet, therefore depriving plaintiff of an essential element of his faith.

7    Plaintiff began experiencing gastrointestinal disturbances, recurring headaches, extreme fatigue, muscle weakness, insomnia, irritability, and mental depression.

8    Defendant Thompson verified plaintiff's dietary needs when he denied plaintiff's administrative appeal at the first level on March 1, 2004.

9    Plaintiff attempted to exercise his religious rights in accordance with California Code of Regulations title 15, §3054(2).

10   On August 24, 2004, Diane Brewer (now Emmanuella Golden Light), spiritual counselor and healer of Universal Essence Centre,  wrote a letter to defendant Thompson explaining that her religious organization wished to contract with Corcoran State Prison to provide plaintiff's religious dietary needs.

11   On August 27, 2004, defendant Thompson wrote a letter in acknowledgment, advising Ms. Brewer that any food items she provided would need to be donated, and any product and material would require security clearance.  If she was still interested, defendant Thompson would refer her request to the Internal Investigation Unit for more information.

12    On September 20, 2004, Ms. Brewer wrote to defendant Thompson informing him that her organization was still interested, and requested that he refer her request to the Internal Investigation Unit.

13    Ms. Brewer never received a reply to her letter from defendant Thompson

14    After several months, Ms. Brewer contacted Ageel Malik El-Amin, the Muslim chaplain at CSP-Cor, and shared with him her concerns about providing plaintiff's special religious dietary needs.

15    At the Chaplain's request, plaintiff presented defendant Scribner with a proposal for his religious organization to contract with the Department.  Plaintiff never received a direct response from defendant Scribner.

16    Ageel Malik El-Amin informed plaintiff that defendant Scribner thought plaintiff had presented a good proposal but that he had no intention of allowing plaintiff's religious organization to contract with the Department.

17    Plaintiff contends that he has done everything possible and in accordance with Department rules to have his religious organization contract with the prison, and that the defendants arbitrarily deprived him of his only avenue to meet his special religious dietary needs and an essential element of his faith.

B.    <u>Disputed Facts</u>

1.    Whether Defendants burdened the practice of Plaintiff's religion, by preventing him from engaging in conduct he contends is mandated by his faith.

2.    Whether the CSP-Cor religious diet program, California Code of Regulations title 15, § 3054, is reasonably related to legitimate penological interests.

3.    The nature and extent of Plaintiff's injury, if any.

4.    The amount of Plaintiff's damages, if any.

C.    <u>Disputed Evidentiary Issues</u>

Should Plaintiff or any other incarcerated witnesses testify, Defendants will seek to impeach such witnesses by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating a propensity to lie.

1   Defendants will object to the testimony of any witnesses not listed in Plaintiff's pretrial

2   statement.

3        D.     <u>Special Factual Information</u>

4        None.

5   **IV.   Relief Sought**

6   Plaintiff seeks compensatory, nominal, and punitive damages.  Defendants seek judgment

7   in their favor and their costs of this action.

8   **V.   Points of Law**

9   The First Amendment to the United States Constitution provides that "Congress shall make

10   no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S.

11   Const., amend. I.  Prisoners "retain protections afforded by the First Amendment," including the free

12   exercise of religion.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987).

13   Beliefs which are both sincerely held and rooted in religious belief trigger the protection of the Free

14   Exercise Clause.  <u>Shakur v. Schriro</u>, 514 F.3d 878, 884 (9th Cir. 2008) (quotations and citations

15   omitted) (disavowing objective centrality test and confirming applicability of sincerity test).

16   However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of

17   many privileges and rights, a retraction justified by the considerations underlying our penal system.'"

18   <u>O'Lone</u>, 482 U.S. at 348 (quoting <u>Price v. Johnson</u>, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)).

19   "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged

20   to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that

21   ordinarily applied to alleged infringements of fundamental constitutional rights." <u>O'Lone</u>, 382 U.S.

22   at 349.  Under this standard, "when a prison regulation impinges on inmates' constitutional rights,

23   the regulation is valid if it is reasonably related to legitimate penological interests." <u>Turner v. Safley</u>,

24   482 U.S. 78, 89, 107 S.Ct. 2254 (1987).  First, "there must be a valid, rational connection between

25   the prison regulation and the legitimate government interest put forward to justify it," and "the

26   governmental objective must itself be a legitimate and neutral one."  <u>Id</u>.  A second consideration is

27   "whether there are alternative means of exercising the right that remain open to prison inmates."  <u>Id</u>.

28   at 90 (internal quotations and citation omitted).  A third consideration is "the impact accommodation

of the asserted right will have on guards and other inmates, and on the allocation of prison resources generally." Id. "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id.

**VI.   Abandoned Issues**

Plaintiff abandons his free exercise claim arising from the denial of essential oils, his free exercise claim against defendant Shultz, and his claims for injunctive relief.

**VII.   Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

A.     Plaintiff's Witnesses

1.     Plaintiff Robert Glass, J-36237

2.     Inmate Derek Simmons, E-79895 [1]

Plaintiff has not submitted the names or locations of any unincarcerated witnesses. By order issued April 2, 2008, plaintiff was ordered to notify the court in writing, of the names and locations of any unincarcerated witnesses who refuse to testify voluntarily. The court would then calculate the travel expenses for each witness and notify the plaintiff of the amount(s). Plaintiff is reminded that the subpoenas will not be served upon the unincarcerated witness by the United States Marshal unless the money order is tendered to the court. Because no statute authorizes the use of public funds for these expenses in civil cases, the tendering of witness fees and travel expenses is required even if the party was granted leave to proceed in forma pauperis. **If plaintiff wishes to have the Marshal serve any unincarcerated witnesses who refuse to testify voluntarily, plaintiff must submit the money orders to the court no later than July 18, 2008.** In order to ensure timely submission of the money orders, plaintiff should notify the court of the names and locations of his

---

[1] By order issued separately, the court shall grant plaintiff's application for Writ of Habeas Corpus Ad Testificandum as to inmate witness Derek Simmons.

witnesses as soon as possible, and no later than **July 11, 2008.**

   B. <u>Defendants' Witnesses</u>

   1. Defendant Allen K. Scribner.

   2. Defendant Dean Thompson.

   3. Defendant Darren James.

   4. Lana Schultz, RD.

   5. R. Gibson, MSW.

**VIII. Exhibits**

   The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

   A. <u>Plaintiff's Exhibits</u>

   1 Original CDC 602 / Grievance filed in this case.

   2. Complaint with exhibits filed in this case.

   3. California Code of Regulations, Title 15.

   4. Declaration of Inmate Derek Simmons

   5. Declaration of Robert Glass (in support of plaintiff's motion for summary judgment).

   6. Declaration of Robert Glass (in opposition to defendants' motion for summary judgment).

   7. Declaration of D. James in support of defendants' opposition and cross motion for summary judgment.

   8. Declaration of V. Castillo in support of defendants' opposition and cross motion for summary judgment.

   9. Certified letter from Diane Brewer, spiritual counselor and healer of Universal Essence Centre, dated August 24, 2004

   10. Certified letter from Diane Brewer, spiritual counselor and healer of Universal

1       Essence Centre, dated September 20, 2004.

2       11.     Certified letter from Diane Brewer, spiritual counselor and healer of Universal

3               Essence Centre, dated December 18, 2004.

4       12.     Certified letter from Dean Thompson, dated August 27, 2004.

5       13.     Plaintiff's proposal for religious organization to contract with Department of

6               Corrections to provide plaintiff's special religious dietary needs.

7       14.     All oppositions to motions for summary judgment or motion to dismiss.

8       15.     All other oppositions to any other motions in this case.

9       16.     Plaintiff's motion for temporary restraining order and preliminary injunction, and

10              declaration in support.

11      B.      Defendants' Exhibits

12      DX 200.         Mental Health Interdisciplinary Progress Notes, June 2001 – January 2006.

13      DX 201.         CDCR Form 602, Log # CSP-Cor-05-2184.

14      DX 202.         CDCR Form 602, Log # CSP-Cor-04-0590, including institutional

15                      responses.

16      DX 203.         Reception Center Physical Examination July 5, 1990.

17      DX 204.         Reception Center Physical Examination October 14, 1994.

18      DX 205.         Physician Progress Note dated November 8, 1996.

19      DX 206.         Physician Progress Note dated September 29, 1998.

20      DX 207.         Dietitian Progress Note dated October 19, 1998.

21      DX 208.         Health Care Screening Form dated January 8, 1999.

22      DX 209.         Physician Progress Note dated April 20, 1999.

23      DX 210.         Physician Progress Notes dated June 8 and August 10, 1999.

24      DX 211.         Physician Progress Note dated August 18, 1999.

25      DX 212.         Physician Progress Note dated October 19, 1999.

26      DX 213.         Physician Progress Note dated December 1, 1999.

27      DX 214.         Physician Progress Notes dated March 30 and May 22, 2000.

28      DX 215.         Physician Progress Note dated May 31, 2000.

1   DX 216.          Physician Progress Note dated April 27, 2001.

2   DX 217.          Memorandum Requesting Dietary Consultation dated May 7, 2001.

3   DX 218.          Dietary Consultation dated May 7, 2001.

4   DX 219.          Physician Progress Notes dated May 28 and July 23, 2002.

5   DX 220.          Primary Care Flow Sheet May 13, 2003 – October 26, 2004.

6   DX 221.          Standard BUS Screening Form dated April 29, 2003.

7   DX 222.          Inmate Request for Interview dated April 30, 2003.

8   DX 223.          Health Record Review Form dated April 30, 2003.

9   DX 224.          Health Care Request for Dietary Consultation dated July 22, 2004.

10  DX 225.          Physician Progress Note dated August 10, 2004.

11  DX 226.          Dietary Consultation dated August 27, 2004.

12  DX 227.          Inmate Glass Statement dated May 5, 2003.

13  DX 228.          Inmate Glass Statement dated July 7, 2005.

**IX.   Discovery Documents To Be Used At Trial**

None.

**X.   Further Discovery or Motions**

None.

Both parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2). If either party intends to file motions in limine, the procedure and time requirements are set forth below.

**XI.   Stipulations**

Defendants offer to stipulate to defendants' undisputed facts listed above, and to the admission of Defendants' exhibits listed above.

**XII.   Amendments-Dismissals**

None.

**XIII.   Settlement Negotiations**

The parties are currently engaged in settlement negotiations.

10

**XIV.   Agreed Statements**

    None.

**XV.   Separate Trial Of Issues**

    No.

**XVI.   Impartial Experts - Limitation Of Experts**

    None requested.

**XVII. Attorneys' Fees**

    Plaintiff is proceeding pro se and is not entitled to attorney's fees.   Should plaintiff obtain representation of counsel at trial, plaintiff seeks attorney's fees. Defendants do not request attorney's fees.

**XVIII. Trial Exhibits**

    No special handling of trial exhibits requested.

**XIX.   Miscellaneous**

    A.   <u>Further Trial Preparation</u>

        1.   <u>Motions In Limine Hearing and Briefing Schedule</u>

    Any party may file a motion in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  <u>Luce v. United States</u>, 469 U.S. 38, 41 n. 4 (1984); <u>Jonasson v. Lutheran Child and Family Services</u>, 115 F. 3d 436, 440 (7th Cir. 1997).  The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  <u>Id.</u>; <u>Hawthorne Partners v. AT & T Technologies, Inc.</u>, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

    All motions in limine must be served on the other party, and filed with the Court, by **August 4, 2008**.  Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

    Any opposition to a motion in limine must be served on the other party, and filed with the

Court, by **August 18, 2008**.

If any party files a motion in limine, the Court will hear and decide such motions on the morning of trial.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

2.   <u>Other</u>

The parties are relieved of their obligation under Local Rule 16-285 to file trial briefs.  The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial.  If the parties wish to submit a proposed verdict form, they must do so on or before **August 18, 2008**.

Defendants shall file proposed jury instructions as provided in Local Rule 51-163 on or before **August 18, 2008**.  If plaintiff wishes to file proposed jury instructions, he must do so on or before **August 18, 2008**.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible.  All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and containing citation of supporting authority, and the customary legend, <u>i.e.</u>, "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction.  One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition.  Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at: dlborders@caed.uscourts.gov.

Proposed voir dire questions, if any, shall be filed on or before **August 18, 2008**.  Local Rule 47-162.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **August 18, 2008**.  The Court will consider the parties' statements but will draft its own statement.  The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The original and two copies of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Irma Lira no later than **August 18, 2008**. All of plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). All of defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

**XX.    Objections to Pretrial Order**

Any party may file and serve written objections to any of the provisions of this Order on or before July 21, 2008. Such objections shall specify the requested modifications, corrections, additions, or deletions. If amendments to this Order result from any written objections, an Amended Pretrial Order will issue.

***

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.


IT IS SO ORDERED.

**Dated:    July 2, 2008**        **/s/ Dennis L. Beck**
                           UNITED STATES MAGISTRATE JUDGE

13